IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                              Case Nos.:    5:10cr13/RS/EMT
                                               5:11cv216/RS/EMT

JAMES MICHAEL BEALL

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 32).  The Government filed a response (doc. 38), and Defendant filed a reply (doc. 40).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that his § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant was charged in a three-count indictment with enticing a minor to engage in sexually explicit conduct for purposes of producing a visual depiction of the conduct in violation of 18 U.S.C. § 2251(a) ("Count One"), knowingly distributing and receiving and attempting to distribute and receive child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1) ("Count Two"), and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) ("Count Three").  Represented by appointed counsel Christopher Patterson, Defendant entered a plea

---

[1] Detailed statements of facts describing the offense conduct are set forth in the Statement of Facts signed in conjunction with the plea agreement (doc. 21) and in the Presentence Investigation Report (doc. 28), and thus the facts will be set forth herein only as necessary.

of guilty pursuant to a written plea agreement and statement of facts on April 23, 2010 (docs. 20–22).

The Presentence Investigation Report ("PSR") was disclosed to the defense on June 3, 2010 (docs. 24, 28 ). With respect to Count One, Defendant had a base offense level of 32 (PSR ¶ 31). He received four, two-level upward adjustments (which will be discussed in greater detail below) (PSR ¶¶ 32–35). Thus, his adjusted offense level on Count One was 40 (PSR ¶ 39). Counts Two and Three were grouped, and Defendant had a base offense level of 22 (PSR ¶ 41). He received various upward adjustments which resulted in an adjusted offense level of 35 on these counts (PSR ¶¶ 40–48). His combined adjusted offense level of 41 was reduced by three levels for acceptance of responsibility, and he had a total offense level of 38 (PSR ¶¶ 49–57). Defendant's criminal history category was II, and the applicable advisory guidelines range was 262 to 327 months (PSR ¶ 92).

Neither party objected to the PSR (doc. 37 at 3). The court sentenced Defendant to a term of 294-months imprisonment as to Count One, 240 months as to Count Two, and 120 months as to Count Three, with all terms to be served concurrently (*id*. at 5; docs. 25, 26). The court noted the basis for its sentence, which corresponded with the offense level calculations set forth in the PSR (doc. 37 at 6–7). The court also imposed a fifteen-year term of supervised release on each count, also to be served concurrently (*id*. at 7; docs. 25, 26). The court advised Defendant of his appellate rights; Defendant did not appeal (doc. 37 at 11–12).

In the present motion, which was timely filed, Defendant separates his claims into four grounds for relief. He contends in ground one that counsel was constitutionally ineffective, he challenges in grounds two and three the application of the sentencing enhancements, and he claims in ground four that his plea was not knowing and voluntary. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194

n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be

fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two-part test also applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 59. In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have

taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (unpublished)[2] (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."

---

[2] The undersigned cites Garcia (and other unpublished cases herein) only as persuasive authority and recognizes that the opinion is not considered binding precedent. See U.S. Ct. of App. 11th Cir. Rule 36-2, 28 U.S.C.A.

Case Nos.: 5:10cr13/RS; 5:11cv216/RS/EMT

Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

### Ground One

Defendant contends that counsel was constitutionally ineffective because he wrongly advised Defendant that he could present no defense to Count One of the indictment. Defendant asserts that he wished to argue lack of mens rea. He claims he was actually innocent because he lacked prior

knowledge of the victim's age at the time the images were produced and lacked prior intent to distribute the images.

With respect to the first portion of Defendant's claim, knowledge of the victim's age is not an element of a § 2251 violation. *See* United States v. Riquene, No. 1310034, 2014 WL 169662, at *3 (11th Cir. Jan. 16, 2014) (citing United States v. Deverso, 518 F.3d 1250, 1257 (11th Cir. 2008)). Furthermore, the description of the offense conduct contained in the Statement of Facts that was signed by Defendant and affirmed by him as true under oath at his rearraignment easily defeats the first portion of his claim (docs. 21, 36 at 13). Those facts reveal that in early January of 2009, Defendant began communicating through the internet with a twelve-year-old girl identified by the initials "MH" (doc. 21 at 1). Defendant asked MH if she would send him photographs of herself (*id.*). She emailed Defendant photographs of her face, after which Defendant asked MH if she would email him photographs of herself posing nude, and he instructed her how to pose (*id.*). On or about January 19, 2009, MH emailed Defendant seven images of herself engaged in sexually explicit conduct (*id.* at 1–2). Law enforcement obtained search warrants to search Defendant's email accounts and found that Defendant had indeed received the seven images from MH on or about January 19, 2009 (*id.* at 2). Law enforcement further discovered that from January 19, 2009, through the end of January, Defendant forwarded these images to other individuals (*id.*). In at least one email in which he forwarded the images, Defendant stated that the girl was only twelve-years-old (*id.*).

Law enforcement also discovered that between December 9, 2008 and January 31, 2009, Defendant received and possessed images of child pornography via email and distributed those images to others via email (doc. 21 at 2). Six other child victims—in addition to MH—were identified (*id*).

Defendant was interviewed by law enforcement on November 19, 2009, and again (apparently) on January 20, 2010 (*see* doc. 21 at 2–3; PSR ¶¶ 17, 21).[3] He admitted that he had received and distributed the previously-described images of child pornography through two email

---

[3] Paragraph 17 of the PSR states that Defendant was initially interviewed by law enforcement on November 17, 2009 (doc. 28, PSR ¶ 17). Paragraph 21 of the PSR states that Defendant "was again interviewed" by law enforcement on January 20, **2009**, and the statement of facts reflects the same date, but these appear to be scriveners' errors, as the sequence of events suggests that the date of the second interview must have been January 20, 2010 (or, less than two months prior to the date Defendant was indicted).

Case Nos.: 5:10cr13/RS; 5:11cv216/RS/EMT

accounts that belonged to him.  He also admitted having internet conversations with MH and, specifically, that "he knew that MH was twelve (12) years old at the time he was requesting that she send him nude photographs," and that he "talked with MH about how she should pose in the images that she was forwarding to him" (doc. 21 at 3).  Thus, not only is Defendant's knowledge of MH's young age irrelevant, since such knowledge is not an element of the charged offense, but also the record belies Defendant's claim that he did not know her age.

Defendant's intent to distribute the images is likewise irrelevant.  Section 2251(a) provides that:

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).  Thus, the jurisdictional element may be satisfied in several ways, and it is not necessary to prove that Defendant had the "prior intent to distribute the images" in interstate commerce, as Defendant claims (*see* doc. 32 at 3).  *See*, *e.g.,* United States v. Smith, 459 F.3d 1276, 1282, 1289 (11th Cir. 2006) (noting, for example, that the provisions of § 2251(a) extend to child pornography (1) produced with the intent that it eventually travel in interstate commerce, (2) produced with materials that have traveled in interstate commerce, or (3) that actually has traveled in interstate commerce).  Defendant's claim that counsel was constitutionally ineffective for advising Defendant that he had "no defense" to Count One is without merit, and he is not entitled to relief.

Grounds Two and Three

In his second and third grounds for relief, Defendant challenges the applicability of the sentencing enhancements under § 2G2.2, *et seq*. (PSR ¶¶ 32–35).[4] As an initial matter, Defendant's assertion that the district court erred in applying guidelines adjustments to increase his sentence, or by relying on information in the PSR to do so, is procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley, 523 U.S. at 621; McKay, 657 F.3d at 1195. However, because Defendant raises virtually the same issue in the context of an ineffective assistance of counsel claim, and ineffective assistance of counsel can constitute cause for failure to raise the claim, the court provides the following analysis of the merits of Defendant's claims.

Four adjustments pursuant to § 2G2.2(b) applied to the calculation of Defendant's guidelines range on Counts Two and Three. He purports to challenge three of those adjustments here (the total of which resulted in an eleven-level upward adjustment) without suggesting any factual or legal basis for the challenges. The adjustments were properly based on information contained within the PSR, and to the extent Defendant suggests otherwise he is mistaken. *See* United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010) (defendant admits, for sentencing purposes, the facts in the PSR to which he does not object); United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on . . . undisputed statements in the presentence report."). After a review of the record, the undersigned concludes that each of the adjustments was supported by the facts of this case.

The first challenged adjustment, a five-level adjustment pursuant to § 2G2.2(b)(3)(B), was applied because the offense involved the distribution of child pornography for the receipt, or expectation of receipt, of a thing of value (such as other child pornographic material) (PSR ¶ 41). The facts set forth in the PSR establish that in addition to the images of the victim of Count One, Defendant received and possessed images of child pornography via email and he in turn distributed the images to others (PSR ¶ 20). At least six victims were positively identified by the Government (doc. 21 at 2). Distribution of images of child pornography with the expectation of receiving other similar images is sufficient to warrant application of the adjustment.

---

[4] Defendant does not challenge the application of the four, § 2G2.1 two-level adjustments to the offense conduct charged in Count One, apparently based in part on his erroneous belief that his conviction on Count One is invalid.

Defendant received a four-level adjustment pursuant to § 2G2.2(b)(4) because some of the images portrayed sadistic or masochistic conduct or other depictions of violence (PSR ¶ 42). Some of the images that Defendant distributed depicted children having anal intercourse with adult males, thus supporting the application of this adjustment.

The third challenged adjustment, a two-level adjustment pursuant to § 2G2.2(b)(6), was for the use of a computer for possession, transmission, receipt or distribution of the prohibited material (PSR ¶ 43). A computer appears to have been Defendant's only means of engaging in the offense conduct, and the application of this adjustment cannot reasonably be disputed.

Counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012) (unpublished) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (unpublished) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful). Because the challenged adjustments were factually and legally supported, counsel was not constitutionally ineffective for his failure to object to them.[5]

---

[5] Defendant states in his motion that counsel failed to "challenge/appeal" the applicability of these adjustments (doc. 32 at 3). Defendant never specifically states, however, that he asked counsel to appeal. Defendant's

The court also notes, that even if the challenged adjustments for Group Two had not been properly applied, Defendant could have received the same sentence. Defendant's offense level and guidelines range were determined by grouping. His adjusted offense level with respect to Group One (Count One), which he does not challenge, was 40. Because his adjusted offense level for Group Two (Counts Two and Three) was 35, which was five levels below Group One's level, Defendant had a total of 1 ½ Units, pursuant to § 3D1.4. This resulted in a one-level increase to the greater offense level (i.e., the level determined for Group (Count) One), and his combined adjusted offense level was thus 41 (PSR ¶ 54). As noted above, Defendant's total offense level after the reduction for acceptance of responsibility was 38, and he had a criminal history category of II. The corresponding advisory guidelines range was 262 to 327 months.

If Defendant's adjusted offense level for Group Two had been nine or more levels less serious than Group One (i.e., level 31 or less), it would have been disregarded for Unit scoring purposes. U.S.S.G. § 3D1.4(c). However, Group Two still would have provided "a reason for sentencing at the higher end of the sentencing range for the applicable offense level." *Id.* Without consideration of Group Two, Defendant's total offense level would have been 37 (40 minus 3 for acceptance of responsibility), with a corresponding advisory guidelines range of 235 to 293 months. A sentence of 293 months would have been supported by the guidelines, and Defendant's actual 294-month sentence would not have been unreasonable or unlawful (the maximum sentence for Count One is 360 months, *see* PSR ¶ 89).

Furthermore, to the extent Defendant complains about the sentences he received on Counts Two and Three as a result of the guidelines adjustments above, the court notes that the court imposed the statutory maximum sentences on these two counts. Thus, the sentences imposed on Counts Two and Three (240 months and 120 months, respectively) had no practical effect on his overall term of

---

former trial counsel states in his affidavit that he sent a letter to Defendant prior to sentencing advising him of his right to appeal and instructing Defendant to advise counsel in writing if he wished to appeal (doc. 38-1 at 1, 6). Counsel also advised Defendant in this letter that based upon Defendant's plea and cooperation agreement, stipulation to facts, and voluntary plea, he anticipated "no good faith basis upon which to appeal, unless the Court imposes an illegal sentence" (*id*. at 19). Counsel does not indicate whether the two men discussed an appeal after Defendant was sentenced, but he does state that he "was at no time advised by the defendant to file a notice of appeal" (*id*. at 14). Defendant does not contradict counsel's affidavit or mention the issue of an appeal at all in his reply. Thus, no discussion of counsel's duties with respect to an appeal is warranted, as the issue of failure to file an appeal is not properly before the court.

incarceration, as the court ordered those sentences to run concurrently with each other and with the 294-month term of imprisonment imposed on Count One. Thus he is not entitled to relief.

Ground Four

As his final ground for relief, Defendant contends that his plea was involuntary because he did not understand the extent of his exposure with respect to the term of supervised release. This claim is procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley, 523 U.S. at 621; McKay, 657 F.3d at 1195. Defendant attempts to circumvent this procedural bar by suggesting for the first time in his reply that counsel was constitutionally ineffective in this regard.

According to the terms of the written plea agreement, Defendant faced "up to three (3) years of supervised release" on each count (doc. 20 at 2). The agreement did not specify whether any portion of the sentence would be imposed concurrently or consecutively, but it did state that the district court's discretion in imposing sentence would be limited only by the statutory maximum sentence and any applicable mandatory minimum sentence (*id*. at 3). Defendant now makes a conclusory assertion that "his belief that he would be required to serve no more than three years of supervised release upon his release from any term of imprisonment . . . was the sole basis for entering into the plea agreement" (doc. 32 at 4).

In describing Defendant's sentencing exposure at the rearraignment proceeding, the district court repeated the erroneous information contained in the plea agreement (*see* doc. 36 at 10–11).[6] The PSR, however, properly reflected that Defendant was facing a term of supervised release ranging from a mandatory five years to life pursuant to 18 U.S.C. § 3583(k) (PSR ¶ 94). The record contains assurances from both counsel and Defendant at sentencing that counsel reviewed the PSR with Defendant and they agreed that there were no legal objections to the PSR (doc. 37 at 3).

The Government argues that "'[a] district court's misstatement regarding the term of supervised release at the plea colloquy does not prejudice a defendant when the proper range of supervised release was contained in [the presentence investigation report] and was unobjected to'" (doc. 38 at 11) (quoting United States v. Langley, 384 F. App'x 904, 906 (11th Cir. 2010)

---

[6] The court did not specify whether either the sentences of imprisonment or the terms of supervised release would run consecutively or concurrently.

Case Nos.: 5:10cr13/RS; 5:11cv216/RS/EMT

(unpublished) (citing United States v. Brown, 586 F.3d 1342 (11th Cir. 2009))).[7] Actually, Brown is more factually similar to this case, although the undersigned notes that Brown, Langley, and the other cases cited herein were decided on direct appeal rather than collateral review.

In Brown, the defendant appealed his conviction for failure to register under 18 U.S.C. § 2250(a) as a sex offender and argued for the first time on appeal that the district court committed plain error during his Rule 11 colloquy when it misstated the maximum term of supervised release. 586 F.3d at 1344. In Brown, as here, both the written plea agreement and the district court during the rearraignment mistakenly stated that the defendant faced a maximum three-year term of supervised release. *Id*. at 1345. The Brown defendant's PSR correctly identified the applicable term of supervised release as being five years to life, pursuant to 18 U.S.C. § 3583(k). *Id*. In Brown, there were no written objections to either the PSR or the life term of supervised release that the court imposed. *Id*. On direct appeal, the government conceded error but argued that there was no prejudice. *Id*. The Eleventh Circuit noted that in the context of a Rule 11 error, prejudice to the defendant means "a reasonable probability that, but for the error, he would not have entered a plea." *Id*. (quoting United States v. Dominguez Benito, 542 U.S. 74, 83 (2004)). It further noted that even if defendant established clear, prejudicial error, the error could not be remedied unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (quoting Puckett v. United States, 129 S. Ct. 1423, 1429 (2009)). The court acknowledged that there was plain error, but found that defendant had failed to show prejudice because the error had been corrected by the PSR, to which defendant failed to object, and that defendant had also failed to object to the court's sentence or moved to withdraw his guilty plea. 586 F.3d at 1346. The Brown court concluded that under those circumstances, the defendant's own conduct indicated that his substantial rights were not harmed by

---

[7] In the undersigned's view, the Government omitted a critical portion in its quotation from Langley. The court in Langley stated that a "court's misstatement regarding the term of supervised release at the plea colloquy does not prejudice a defendant when the proper range of supervised release was contained ***in the written plea agreement*** and the PSI and was unobjected to." Langley, 384 F. App'x at 906 (citing United States v. Brown, 586, F. 3d 1342, 1345–47 (11th Cir. 2009)) (emphasis added). In its memorandum, the Government omitted the Langley court's reference to the plea agreement, which is a significant factor that distinguishes Langley from this case (the Langley court specifically noted that the district court had "confirmed that Langley had read and understood the written plea agreement [which indicated the correct term of supervised release], discussed it with his attorney, and had no questions about it." Langley, 384 F. App'x at 904). However, as explained next, other cases support the proposition urged by the Government.

the district court's error during the plea hearing. *Id*., 586 F.3d at 1286; *see also* United States v. Carey, 884 F.2d 547, 549 (11th Cir. 1989); United States v. Rasco, No. 11-14701, 2013 WL 6068466, at *8 (11th Cir. 2013). It also found that the defendant failed to show a reasonable probability that he would not have entered a plea of guilty but for the Rule 11 error, because the assertion had only been raised for the first time in his reply brief on appeal; there had been no motion to withdraw the guilty plea. Brown, 586 F.3d at 1347; *see also* United States v. Taylor, 531 F. App'x 961, 963 (11th Cir. 2013) (unpublished) (under similar circumstances, defendant who received life term of supervised release "failed to show that error affected his substantial rights or that he would have withdrawn his plea had he known of the correct statutory maximum term of supervised release"); United States v. Zeiders, 440 F. App'x 699 (11th Cir. 2011) (unpublished) (same); United States v. Nelson, 370 F. App'x 15, 18 (11th Cir. 2010) (unpublished) (failure to object to statement of the correct term of supervised release in PSR precludes showing of violation of substantial rights, despite defendant's assertion on appeal that a reasonable probability existed that he would not have pleaded guilty but for the error).

Although Brown was decided on direct appeal rather than on a motion for collateral relief, it is undeniably instructive. Like the defendant in Brown, Defendant in this case did not object to the PSR's correct statement about the statutory range of supervised release, despite the fact that it exceeded the range of which he had previously been advised (doc. 37 at 3). And, in this case, as in Brown, there was no post-sentencing objection to the term of supervised release imposed by the court, and thus the opportunity to object was forfeited (doc. 37 at 11; Brown, 586 F.3d at 1286). Nor did Defendant make any attempt to withdraw his guilty plea. All of these circumstances suggest that there was no denial of Defendant's substantial rights.

Defendant asserts for the first time in his § 2255 motion that he would not have entered a guilty plea if he thought that he would serve more than three years of supervised release. He posits that his sentence of 294-months imprisonment followed by 180 months of supervised release was well in excess of the 360-month statutory maximum term of imprisonment followed by three years of supervised release of which he had been advised during the plea colloquy. Defendant's argument appears to be related to the Eleventh Circuit's opinion in United States v. Bejarano, 249 F.3d 1304 (11th Cir. 2001), in which the court stated in a footnote:

> [w]e also note that every circuit that has addressed this issue [error in advising a defendant about the applicable term of supervised release] has held that a district court's failure to inform a defendant that he faces a specific term of supervised release, or to inform the defendant of the effect of supervised release on his sentence, is harmless error in a situation like this one, where the defendant's actual sentence, including the term of imprisonment and period of supervised release, is well below the sentence that the defendant was informed by the district court that he faced.

Bejarano, 249 F.3d at 1306 n.1 (cited in Brown, 586 F.3d at 1346–47) (emphasis added). To the extent Defendant contends, based on the foregoing footnote, that the error here was not harmless because his fifteen-year term of supervised release exceeded the maximum three-year term that he was mistakenly advised of, his argument is without merit. A harmless error analysis is only appropriate if a defendant had moved in the district court to withdraw his plea based on a Rule 11 error, something Defendant did not do here, and thus review is limited to plain error. Brown, 586 F.3d at 1347 (citations omitted).

While there was plain error in this case, the court finds Defendant's bald assertion that he would not have entered a guilty plea had he known about the term of supervised release he faced to be conclusory and contrary to logic under the unique facts of this case. As noted above, Defendant had already confessed his involvement in the offense conduct to law enforcement, providing enough information to virtually guarantee a conviction on all three counts of the indictment (doc. 21, PSR ¶¶ 20, 21). If Defendant had proceeded to trial, as he now suggests he would have done, even assuming that he did not testify in his own behalf, upon conviction he could have expected his total offense level to have been at least three levels higher. The higher advisory guidelines range would have exposed him to a term of incarceration of 360 months to life, followed by the applicable minimum mandatory term of supervised release of five years to life on each count. In sum, Defendant not only would have faced the possibility of a life-time term of supervised release, but also he would have faced a higher guidelines range and, correspondingly, the strong likelihood of a longer term of incarceration. Thus, Defendant "has failed to show a reasonable probability that he would not have pled guilty but for the Rule 11 error." Brown, 586 F.3d at 1347 (citing Dominguez Benito, 542 U.S. at 83). Defendant has correspondingly failed to show that he is entitled to relief on his claim that his plea was involuntary or that counsel was constitutionally ineffective in this regard.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 32) be **DENIED**.
2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of April 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**